```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                          BECKLEY
```

**WILLIAM DANIEL,**

    **Petitioner,**

**v.**                                  **Case No. 5:07-cv-00465**

**T.R. CRAIG, Warden,**
**FCI Beckley,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On July 31, 2007, Petitioner filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 (docket # 1). He did not pay the $5.00 filing fee and he did not apply to proceed without prepayment of fees and costs. The application recites that Petitioner is serving a sentence of 188 months at FCI Beckley, which sentence was imposed on February 15, 2000, upon his convictions on six counts of unarmed bank robbery in the District of Oregon. (# 1, at 1.) The court notes that following the execution of this sentence, Petitioner faces a detainer which was filed against him by the U.S. Parole Commission. <u>Id.</u>, at 9.

Petitioner's ground for relief, as stated in his application, is as follows [spelling corrected]:

> (a) Ground one: Unlawful execution of sentence, which may likely result in untimely death or serious injury.
> FACTS supporting ground one: The Warden delayed medically necessary medical surgery, needed to stop flow of raw blood through intestines, for a number of days and weeks.

> Then coerced signature of Petitioner to undergo dangerous medical surgery against medical advice of treatment physicians at the local hospital. Now, about three weeks after surgery I continue to bleed through my intestines, and may be bleeding internally, as well. However, Warden refused to transfer Petitioner to a medical facility nor contact specialist necessary to properly diagnose and treat this life-threatening condition. And, Petitioner may likely suffer untimely death or irreparable harm, in the immediate foreseeable future, unless the court act to appoint counsel and order Petitioner's immediate transfer to a medical facility in the community needed to properly diagnose and treat his life-threatening medical condition.

Id., at 7.

### FACTS REGARDING PETITIONER'S CONDITION

Petitioner filed a Declaration (# 2) in support of his application. The following facts are taken from the Declaration and from the transcript of the hearing on August 3, 2007 (# 13), at which testimony was taken from Petitioner and from Dr. McLain, the medical director at FCI Beckley.

In 2006, Petitioner was hospitalized at USP Terre Haute for severe rectal bleeding, requiring a transfusion. The bleeding was attributed to his advanced cirrhosis of the liver, which prevents proper blood flow through the liver, resulting in bleeding from his hemorrhoids. Petitioner states that prison doctors in Terre Haute recommended against surgical removal of the hemorrhoids due to the risk of bleeding to death. (# 2, at 1-2.)

In May, 2007, Petitioner was transferred to FCI Beckley, and medical staff became aware of his medical condition. On June 7 and 8, 2007, Petitioner was treated for an attack of pancreatitis. A

blood test revealed that his hemoglobin level had dropped to 8.1, well below normal for a healthy individual. Medical staff was aware of the low hemoglobin result on June 11, 2007. Petitioner did not seek medical care (did not complete a sick call slip), and medical staff did not provide medical care for sixteen days. On June 28, 2007, Petitioner reported to sick call, complaining of rectal bleeding, and medical staff sent him to Beckley Appalachian Regional Hospital (BARH). At BARH, Petitioner's blood count was 7.9. Petitioner received four units of whole blood, and one unit of platelets. BARH physicians declined to perform a hemorrhoidectomy, and recommended that Petitioner be evaluated for a TIPPS procedure to relieve his portal hypertension. Petitioner was discharged from BARH.

Petitioner returned to FCI Beckley on July 1, had additional bleeding, and was sent back to BARH, where his blood count was unchanged. He was returned to the prison that day.

FCI Beckley medical personnel contacted Dr. Lohan at Charleston Area Medical Center, who agreed to evaluate Petitioner on July 3. The evaluation was performed; Dr. Lohan agreed to perform a hemorrhoidectomy, and the surgery was performed on July 6. Petitioner was returned to FCI Beckley and seen at the clinic there on July 10, 13, 16, 17, 18, 24, and August 2.

On July 24, Petitioner's hemoglobin count was 10.3. Dr. McLain testified that it is normal for a patient to experience

rectal bleeding for two to three weeks after such surgery.  He stated that Petitioner is subject to a chronic care plan, and visits the chronic care clinic every one to three months for lab work and monitoring of his condition to determine if he has developed ascites (the pooling of plasma in the abdominal cavity).

The undersigned conducted a hearing on August 3; Petitioner participated by telephone from FCI Beckley; Dr. Dominick McLain and Dr. Roger Edwards, physicians at FCI Beckley, attended in person, along with counsel for the Bureau of Prisons.  Dr. McLain is the chief medical officer and clinical director at FCI Beckley; Dr. Edwards is Petitioner's primary care physician.

At the conclusion of the hearing, the undersigned directed that the medical personnel submit a report on August 8, 2007, as to Petitioner's hemoglobin result, and observations of evidence of rectal bleeding.

On August 7, 2008, Petitioner filed a document, docketed as a "Motion for Unit Log Book Entries" (# 10), which (a) asks that he have access to comments made in unit log books by correctional officers relating to his medical condition, and (b) disputes Dr. McLain's testimony that Petitioner's medical care has been appropriate.  He particularly questions subjecting him to a hemorrhoidectomy, instead of addressing his portal hypertension.

On August 8, 2007, Respondent filed a Status Report (# 9) which reflected that Petitioner's hemoglobin level had increased to

10.4, and noted that Petitioner had failed to follow instructions regarding the flushing of his commode before a medical professional observed evidence of bleeding.

Petitioner filed a Reply to the Status Report (# 11), noting that his portal hypertension is not being treated.

On August 14, 2007, the court received a letter from Petitioner (# 12), which conveys his concern that he continues to experience bleeding, sometimes lightly and sometimes severely, and expressing his belief that he needs surgery to alleviate the portal hypertension (presumably, the TIPPS procedure).

On August 14, 2007, the Clerk received Petitioner's Motion for Emergency Injunction or Mandamus (# 14), which asks the court to order Respondent (a) to document photographically Petitioner's discharges of blood; and (b) to transport Petitioner to a medical facility within the Bureau of Prisons or a community hospital. Citing Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977) and other cases, Petitioner argues:

> (1) The likelihood of death or irreparable harm to Petitioner without the injunction in this case is great.
> (2) The court may never receive an accurate or reliable "picture" of the extent of Petitioner's bleeding without photographic documentation.
> (3) The likelihood of harm to Respondent with the injunction is non-existent in comparison to the likelihood of death or irreparable harm to Petitioner without relief.

On August 15, 2007, Petitioner filed a Motion to Compel Medical Care of Petitioner (# 15), in which he asks the court to

immediately intervene and compel Respondent to transport Petitioner to a hospital and to provide reasonably necessary treatment and care.  He asserts that his rectal bleeding now is manifested as dark red clots, and that he has a large knot in his lower abdomen.

By Order entered August 20, 2007 (# 16), the court directed Respondent to file another status report concerning Petitioner's hemoglobin level, observations of rectal bleeding, and examination of the abdominal knot.

On August 20, 2007, Petitioner filed a Motion to Appear (# 17), asking that he be permitted to appear in person at future hearings.

On August 27, 2007, Petitioner filed his Objections to the Order of August 20, 2007 (# 20), in which Petitioner accuses Respondent's medical staff of being "sadistic, incompetent and/or deliberately indifferent to his reasonable medical treatment or care." He contends that they have lied to the court concerning the severity of his rectal bleeding.

On August 27, 2007, Petitioner filed a motion (# 21), seeking appointment of counsel, an evidentiary hearing, and evaluation of his medical condition by an unbiased medical care provider.

On August 28, 2007, Petitioner filed another motion (# 22), asserting that, as of August 16, 2007, Dr. McLain directed that medical staff not observe evidence of Petitioner's rectal bleeding. Petitioner argues that this is evidence of Respondent's deliberate

6

indifference to his serious medical needs. He asks for imposition of sanctions, and transfer to a medical facility.

On August 28, 2007, Respondent filed a Second Status Report (# 23), which states as follows:

> Petitioner's medical condition is stable.
> Petitioner's hemoglobin level has continued to rise (11.8).
> Since August 4, 2007, medical personnel have gone to Petitioner's cell four times to observe blood in the commode, and determined each time that Petitioner was not suffering excessive blood loss.
> Petitioner was examined at the clinic on August 21 and 27, 2007, and was found to be in stable condition.
> The lump or knot in his abdomen is a dime-sized umbilical hernia.
> Petitioner is not using the standard procedures for sick call.
> Petitioner is informing the court of his medical conditions prior to informing medical staff at FCI Beckley.

FCI Beckley has a medical clinic but does not have facilities for overnight stays in the clinic.

## ANALYSIS

It is apparent that Petitioner disputes the level and type of medical care which he is receiving at FCI Beckley. Such a claim is not properly filed as an application for habeas corpus. Petitioner has two options for bringing his claim forward, both of which require that he first exhaust the administrative remedies available: the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (generally used for claims of negligence and medical malpractice), and a suit to redress the alleged deprivation of his constitutional rights by federal officials, pursuant to <u>Bivens v. Six Unknown</u>

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (generally used for claims of officials' deliberate indifference to an inmate's serious medical need). Either type of suit requires the payment of a $350 filing fee, even if the inmate has little or no money. 28 U.S.C. § 1915.

The undersigned conducted the evidentiary hearing and directed Respondent to file the two status reports in order to determine whether an actual emergency situation exists as to Petitioner's health care. The court is satisfied, at this point, that further court intervention in this matter is not needed. It is a matter of concern that Petitioner's portal hypertension has not been addressed, but the advisability of that procedure is a decision to be made by medical professionals in the context of the applicable standard of care. The undersigned proposes that the presiding District Judge **FIND** Petitioner has failed to show that he faces a real and immediate threat of injury, as required by Los Angeles v. Lyons, 461 U.S. 95, 102-06 (1983). It is respectfully **RECOMMENDED** that Petitioner's Motion for Emergency Injunction or Mandamus (# 12) be denied.

The undersigned proposes that the presiding District Judge **FIND** that an inmate cannot bring an action for negligence, medical malpractice, or deliberate indifference as to his serious medical needs by filing an application for a writ of habeas corpus. It is respectfully **RECOMMENDED** that this action be dismissed.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Petitioner and Assistant United States Attorney Kelley R. Curry.

August 30, 2007

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge